ADAM L. BINGAMAN et al. vs. WILLIAM ROBERTSON, trustee, &c.

Commercial Bank of Natchez v. Chambers et al., 8 S. & M. 1, cited, confirmed, and explained by the court as applicable to this case.

It has been held by this court, that under the provisions of the act of July 26, 1843, (Hutch. Code, 83,) the legal title to all the property, in-

Bingaman et al. *v.* Robertson.

cluding choses in action, that had belonged to a banking corporation, was vested in the trustee (R.) by operation of law, and the proceedings of the court, consequent upon the declaration of the forfeiture of the charter of the bank.

The trustee (R.) was authorized and empowered to sue for and collect the note in controversy. *Held*, that although the order or judgment of sale pleaded by the defendants be not void, but voidable, it does not take away, or divest the right or title of the trustee (R.).

He is not enjoined from bringing suit upon the note, by the order commanding him to sell, nor can such an order be construed into a prohibition to sue.

He stands in the position of an executor or administrator, who has been directed by an order of the probate court to sell personal property upon which he has administered.

The legal title to the property, is vested in the trustee by operation of law, and the order to sell does not divest it. Until he makes sale, he may maintain any action in reference to the property, after the order of sale, that he could have done before.

The appointment of the trustee by the court, is only an execution of the judgment of forfeiture ever contemplated by the law.

In error from the circuit court of Adams county; Hon. W. P. Harris, judge.

This was a suit brought by Robertson, as trustee of the late Commercial Bank of Natchez, (appointed by the circuit court of Adams county, upon the judgment of forfeiture of the charter being rendered at the May term, 1845,) against the defendants, on their two promissory notes, made to the bank during her existence, held by her at the time of her dissolution, and surrendered as a part of the assets to Robertson, as such trustee. Two errors are assigned by appellants to the decision of the court below, in sustaining appellee's demurrer to appellants' special pleas in bar.

The first special plea is, that an order of sale, embracing the notes sued on, had been procured by the district attorney, in the circuit court, directing Robertson, as trustee, to sell the assets of the bank, under the act of 1846, being subsequent to the trustee's appointment; which order has never been reversed or set aside.

The second special plea is, that although by the judgment of the court in the *quo warranto* proceeding against the bank, it was adjudged that the bank was absolutely forejudged and

excluded from holding or exercising the liberties, franchises, and privileges which had been granted to her by her charter; yet, since this judgment had never been executed, the title to the property of the corporation had not vested in the trustee.

Prior to the institution of this suit, an information in the nature of a *quo warranto*, had been instituted against the Commercial Bank of Natchez, under which its charter had been declared forfeited, and the corporation was judicially dissolved in pursuance of an act of the legislature of Mississippi, passed in July, 1843. Under the provisions of the 8th section of that act, William Robertson was appointed trustee, for the purpose set forth in said section, which is in the following words, viz:—

Sec. 8. Be it further enacted, That upon judgment of forfeiture against any bank or banks, corporation or corporations, person or persons, pretending to exercise corporate powers in this State, as contemplated by this act, the debtors of such bank or banks, corporation or corporations, person or persons, pretending to exercise corporate privileges, shall not be released by such judgment from their debts and liabilities to the same; but it shall be the duty of the court rendering such judgment, to appoint one or more trustees to take charge of the books and assets of the same; to sue for and collect all debts due such bank or banks, corporation or corporations, person or persons, pretending to exercise corporate powers, and to sell and dispose of all property owned by such bank or banks, corporation or corporations, person or persons, pretending to exercise corporate powers, or held by others for its or their use, and the proceeds of the debts when collected, and of the property when sold, to apply, as may hereafter be directed by law, to the payment of the debts of such bank or banks, corporation or corporations, or persons pretending to exercise corporate powers: Provided, further, That the notes of any such bank or banks, corporation or corporations, or others pretending to exercise corporate power, shall at all times be received in payment of any debts due the same.

This judgment and appointment took place before the year 1846.

In February, 1846, the legislature passed an amendment to

Bingaman et al. v. Robertson.

the act of 1843, regulating the mode of proceeding by trustees of dissolved corporations, appointed either before or after the passage of the latter act. The 2d section of this act requires such trustees to return to the circuit court in which the judgment of forfeiture was pronounced, an inventory of all the property and evidences of debt of such corporation which should come to their possession.

The 4th section provides, "that when the inventory is returned as aforesaid, the trustee shall proceed to sell, under the order of said court to the highest bidder for cash, all the property and evidences of debt, specified and set forth in said inventory," &c.

The record shows, that at November term, 1846, of Adams circuit court, and in the matter of the proceedings in which said judgment of forfeiture was rendered, and said William Robertson appointed trustee, said trustee made and returned to said court, an inventory of the effects and evidences of debt of said bank in his hands, and thereupon, on motion of the district attorney for said court, it was ordered and adjudged by said court, that said trustee should sell to the highest bidder for cash, said effects, embracing the debt here sued on; which judgment remains in full force, &c. And this is set up against the right of the trustee to recover by suit upon a note given by a creditor of the bank.

The question presented in this case, is the validity of this judgment, ordering the trustee to sell those effects, and its mandatory force upon the trustee. Judgment was rendered in favor of the plaintiff, and the defendants prayed this writ of error.

S. S. Boyd, for appellants.

The court had jurisdiction over the subject-matter, and the person of the trustee.

1. Of the subject-matter. It was the enforcement of its own judgment over the property condemned. This property was the subject of its action, and within its jurisdiction, from the filing the preliminary affidavit till the final execution of the judgment. Act of Leg. 1843; 3 S. & M. 493. It was specifically within its jurisdiction, by the act of returning the

inventory. The 3d section, act 1846, as to inventory, applies as well to forfeitures under act of 1843 as 1846. Not affected by Chambers's case. Admitted so by counsel.

2. As to the person. He was within its jurisdiction by the judgment of forfeiture, which he was appointed to execute, and he alone could execute.

He was specifically within its jurisdiction, by the return of the inventory; and that act itself placed him in the position of an actor, asking the judgment or order of sale. See 4th sec. act 1846. No notice necessary.

3. Both the subject-matter and person were within the jurisdiction of the court, under the general law. H. Dig. p. 735, § 16. Read it.

4. This jurisdiction was to be exercised according to circumstances, and would authorize the court to do from time to time whatever might lawfully be done to compel the execution of the judgment of forfeiture. Thus,

1. If the officers or stockholders should refuse to surrender the assets to the trustees, an attachment could issue, &c.

2. If the trustee should decline or refuse to make sales, or bring suits to collect debts, or recover property, or to distribute the funds, he could be attached, &c.

3. If he and his sureties shall become insolvent, or he should die, or commit waste, the court could take any proper and necessary order to carry its judgment into full effect.

The limit to this power would seem to be the constitution and the laws under which the *quo warranto* proceedings were had. It must not violate or contradict these.

What are these limits? So far as decided, that the court shall make no order or judgment violating the vested rights of creditors, or the trustee in these assets. The act of 1843 is silent; and that of 1846, so far, limited by the decision in 8 S. & M.

The jurisdiction being established, was the judgment of sale valid or not?

First, notice the objection that it was no judgment. It was, 1. It is so pleaded and admitted. 2. It was the conclusion of law on the facts, and was final of the subject adjudged. 3. It

was the subject of an appeal. Hutch. Dig. 932, § 15. 4. It is the same judgment that includes all the other assets. 5. Not a clerical or legislative, but judicial act. It was, then, a judgment over a subject and party before the court, and is not reversed. Is it void, or voidable? It is not void.

It is good under the act of 1843. The inventory applies to that act, as well as the act of 1846. The right to order a sale of the property of the bank is not denied. Nothing is said about a sale of the notes, &c. But nothing prohibits it. The duty is to " collect," and if that could be effected by a sale, the law does not prohibit it. A sale to affect vested rights, is said to be prohibited by the decision in 8 S. & M. But there is nothing to show any thing on that point here, and the application by the inventory to sell, is sufficient to show that it was not to touch vested rights. The record does not show, that there is any other note in the inventory but this. Hutch. Dig. 331, &c.

It is good under the act of 1846. And we take the ground, that the judgment of sale, plead by us, does not appear to have been made on a forfeiture, under the act of 1843. Hutch. Dig. 332. We speak of the pleading, and not of the fact.

We plead a judgment rendered in November, 1846, and rely on it in bar of this suit.

The answer to our plea is a demurrer admitting it.

This demurrer goes back to the declaration, and prevents the averment in pleading to contradict our judgment. It raises the question, that while our judgment in 1846 stands, you cannot weaken the effect of it by averring or pleading any matter that might have been plead to the motion on which it is rendered. That is where it should have been pleaded, and you cannot by plea, except of fraud, weaken its effects by such averments.

This being true, no one contends the judgment of sale is void.

This judgment being valid, is it erroneous; and can the error, if any, be noticed here?

We take the negative of both points, for they are in truth the same.

This judgment was rendered by a court having jurisdiction over the subject-matter and person.

Whether the facts presented to the court by the inventory and motion warranted the judgment in that case or not, is wholly immaterial, if the court would in any case render it. 9 Leigh, 131–138; 8 Cranch, 9; 3 Phil. Ev. (Cowen & Hill), 1021, &c.

The rule is placed beyond all dispute, that jurisdictional facts cannot be collaterally raised after judgment. Jurisdictional facts are those that give the right to make the order in a particular case, where the jurisdiction over the class of cases, or like cases, is not questioned. 12 Pick. 572; 5 Eng. C. L. R. 137; 5 Dana, 23; 4 Mass. 302; 1 Bailey, 294.

The rule is also stated thus : Where the matter constituting jurisdiction makes a part of the merits or issue to be tried, the judgment cannot be collaterally impeached. It is as good on the point of jurisdiction as on the merits. 3 Phil. Ev. (Cowen & Hill), 1021.

It is sometimes stated, as in 10 Peters, 474, that if the matter alleged against a judgment could be reached by appeal or error, it cannot be collaterally noticed.

To bring our case within them, we proceed to show several cases under each act of 1843 and 1846, where the court might have made this order.

Act of 1843.

1. On a showing by the trustee that the notes were worthless, or too doubtful to warrant the expense of a suit.

2. That the surety or some other party on the notes had offered to give more for them at a sale than he could collect by suit.

3. That the creditors, to whom the proceeds were going, had filed their written request to that mode of collection, being willing to attend the sale and protect themselves, and so wind up the trust.

In any and all of these cases, these jurisdictional facts being proved, would have warranted the judgment of sale. And as the case now stands, we have the right to assert, as a matter of law, they were proved.

Bingaman et al. *v.* Robertson.

Next, under the act of 1846, supposing the forfeiture was under the act of 1843.

1. It might have been proved that the claims of all the creditors were paid.

2. Or the creditors might have filed their consent; and as their rights were alone considered under the act of 1843, they waived those rights. The Chambers case only protected their vested rights.

3. Or the judgment of forfeiture may have been pending on appeal till after the passage of the act of 1846, and the trustee's powers only have vested under that act.

And we have a right in law to claim these facts as proved.

Objections to these views.

1. That such suppositions contradict the record.

This is not true as to our record and plea; because, they are perfectly silent, except as to the motion by the district attorney, and the filing of the schedule.

These supposed cases are explanatory, and not contradictory.

It is no objection, that they contradict the averments of the plaintiff, because they are mere matters *in pais* against our judgment.

2. That the Chambers case is *res adjudicata* against us.

That was a case made by Robertson (the plaintiff here) to revive a suit pending in the high court in favor of the Commercial Bank, at the date of its forfeiture.

That was the whole case; and if the decision went beyond it, it was not *res adjudicata*, even in that case.

The Chambers case no authority —

1. Because rendered on an admission by the plaintiff alone, and not on plea. And the admission was qualified, &c. Read it in 8 S. & M.

2. The decision was solely as to the constitutionality of the act. It did not touch the question of a judgment rendered under it.

The law may be unconstitutional, and the judgment good till reversed. Constitutional questions are reversible and not void, if wrong. They are good till decided wrong by courts.

No legislation is void for unconstitutionality. 16 Pick. 96; 3 Scam. R. 104, and cases cited; 1 Cranch, 128; 6 Wheat. 384–429.

3. The case presented only the question of the right to revive; and that right was not inconsistent with either act of 1843 or 1846 requiring suit or sale.

4. But if direct on the point, as now presented by plea, that decision could not reverse a judgment rendered prior to it. 3 Scam. 104, and cases.

How can the decision in the case of *Chambers* v. *The Commercial Bank* reverse a prior decision in the case of *The State* v. *The Same Bank*?

It only established a precedent, but did not alter the rule of law, that a prior judgment, however erroneous, must stand good till reversed.

If reversible, (as the argument, by relying on Chambers's case, admits,) it is good till reversed; and it is not less so, because some other like case has been reversed. That is the best argument for it.

Again. It is urged, that a want of jurisdiction appears on the face of these proceedings. Not so, for all the reasons above; and because it does not appear in the judgment itself. 4 Mass. 302.

5. It is said, the consent of the trustee could not give jurisdiction. This is true if applied to the subject-matter. But if a court has a jurisdiction over a matter, and any particular person is exempted, he may waive his privilege, and can then never be heard to question the jurisdiction. 1 Sumner, 587; 2 Dev. & Bat. 138; 12 S. & M. 640; 2 How. 452; 3 S. & M. 516; 3 Hill, R. 665. And these authorities apply fully. Examine cases cited by Mr. Murran, pp. 5, 6.

6. And now, regarding this trustee as having obtained or consented to this order. We put this case as a reply to all possible objections. Suppose his consent to have gone to the extent of a full compliance with it, would not the sale have been valid? No one who reads the case from 3 Scam., and reflects on the principle and authorities, can deny it. And this ends the question.

Or, could he not have appealed from it? And this is conclusive.

7. That these pleas should be in abatement.

Not so. The first plea is a bar to every possible action, and so must be in bar. It denies title to sue. 4 Howard, 237; 2 Ib. 643; 3 S. & M. 321; 6 Ib. 13; 10 Ib. 586.

No plea could suggest a better writ, for there is no better writ for the trustee.

The second plea raises also the question of title. Robertson has no title till the judgment of forfeiture is executed. Till that time the bank exists, and any suit must be in its name. There is nothing in this case to show the assets have been surrendered to the trustee; and if he holds them, we claim that it is under the order or judgment to sell, and not otherwise.

8. It is said the judgment of forfeiture authorized the trustee to sue, and the judgment of sale is inconsistent with it.

Not so; it is an enforcement of it. It directs him to collect this debt by sale, and he (and not we) is violating the judgment in *quo warranto*.

The second plea, that there has been no execution of the judgment of forfeiture.

The authorities are, that the judgment, whether of seizure or ouster, does not work the dissolution of a corporation. 6 S. & M. 568, per Clayton; *Colchester Corporation* v. *Seaber*, 3 Burr. 1870, per Lord Mansfield; *State Bank* v. *State*, &c. 1 Blackf. 182; Angell & Ames on Corp. 644; 1 Speer, (S. C.) 434.

" The judgment of seizure does not effect the dissolution; the corporation continues to exist until the franchises are seized on execution." Per the court, 1 Blackf. 182.

" The corporation is not dissolved by the judgment of ouster." Per Lord Mansfield, 3 Burr. 1870.

" It is the better doctrine, that it is not the mere judgment of ouster or forfeiture which works dissolution, any more than sentence of death executes a criminal; there must be execution executed." Per Clayton, 6 S. & M. 568.

The surrender of the property is not an execution of the judgment against the bank. It still exists, and if the trustee has

rights, he must use the name of the bank to enforce them, till the bank is ousted by execution.

An additional point has been raised since the submission of this cause.

It is, whether the order or judgment of sale, admitting it to be valid, is absolute or only permissive; not commanding a duty, but conferring a discretion.

We consider it absolute.

1. It is a judgment, so pleaded and so adjudged; and not being conditional or discretionary in its terms, like all other judgments, it is a full and final disposition of the subject to which it relates. How can it be discretionary with a party to obey or disobey an absolute and unconditional order of court? It directs him how he shall exercise the general powers, " to sue for and collect," given under the statute. That is, he shall " collect," as to certain of the assets, by a sale, instead of a suit.

2. The decision of the " trustee case " in *Coulter & Richards, Executors,* v. *Robertson,* furnishes the principle which must conclude the present inquiry. Robertson being a trustee of a peculiar character, the rules applicable to him are also peculiar. He is only a trustee so far as he is an officer to execute a judgment. The trust is the execution of the decree of forfeiture. But the execution of that decree, like any other decree or final order, appertains to the court rendering it, and is absolutely within its control. The court, of course, acts through and by its officers; but whatever is done is the act of the court. The officer is but the instrument in the hands of the court and the law. However large the general powers of such an officer, or official trustee, it is manifest they are all within the control of the court, and subject to it. They may be regulated, at any time, by special orders and directions, and thus be limited and restrained.

The general discretion of an executive officer of a court, is always subject to the special discretion of such court. That is to say, the court exercises its discretion for him, and by directing him in what manner he shall execute all its mandates and decrees.

Bingaman et al., *v.* Robertson.

And this direction is necessarily absolute and restrictive. Otherwise the execution of the final judgments of the courts would be taken from them, and left to the unrestricted volition of its inferior agents and functionaries.

When it is decided that the trust in this case is an official trust, and the trustee an official trustee to execute it, it is also and necessarily decided, that he must act under the orders of the court, and his general powers and discretion must yield to the special discretion and orders of the court. These orders must be absolute and exclusive in their operation on him, unless otherwise expressed in terms, else there would be two judicial discretions in the same case.

While the court is silent, the officer will act under his general powers; but when the court gives special orders and directions he must obey them, and his general discretion is to that extent superseded or controlled.

No principle is clearer than this as to all executive officers of courts, whether sheriffs, commissioners, or receivers. And the analogy between them and the official trustee is so perfect, that no substantial difference can be perceived.

No authority can be found to show that the orders of a court upon its executive officers, directing the manner of executing its decrees, may be regarded by them as permissive or absolute, according to their own views of their general powers and duties.

In fact, if an order were so drawn, it is difficult to see on what principle it could be sustained, or how a court could delegate its judicial discretion to its mere executive officers or trustees — not a public officer, or public trustee, but an official trustee or executive officer of the court.

*A. H. Handy*, on the same side, argued the case orally for plaintiffs in error.

*John M. Murray*, on the same side, filed an elaborate printed argument.

*J. Winchester*, on the same side, made an oral argument before the court.

34*

*J. T. McMurran,* for appellee.

I will notice some of the most plausible reasons urged by the opposite counsel against the decision in the Chambers case being considered conclusive in this case.

There is no dispute about the facts being the same in both cases — the judgment of forfeiture against the bank, and the appointment of Robertson to take charge of the assets, rendered May term, 1845, of Adams circuit court; and the order of sale made at the November term, 1846, three terms afterwards, under the act of 1846.

It is said, that in the Chambers case the order of sale is merely set forth by Robertson by way of admission on his part, and not pleaded by Chambers. But ingenuity can show no difference in its effect when placed on the record in the one case, by an admission, as in the Chambers case, or by his admission in demurring to a plea containing the same fact. That fact thus admitted of record constitutes the whole case, in connection with Robertson's appointment at May term, 1845. And counsel, who gravely argued that case, now insist that it was no case at all; that the fact upon which it was decided did not so exist of record as to be considered by the court, and that its decision is no authority or precedent. To what an extremity counsel are driven, to adopt such an argument. It might as well be said that the Nevitt case, in 6 S. & M. is no authority, though it settled the question as to the assets surviving the dissolution of the bank, for that arose on a motion to revive, like the Chambers case; and Nevitt did not set up by plea his discharge on the dissolution of the bank.

The order of sale, thus admitted by Robertson, was set up and relied on by Chambers to show that Robertson could not revive, but must resort to a sale at auction. The opinion of the court shows this plainly. Bingaman and Surget could just as well contend on principle, that they could contest Robertson's appointment, under the eighth section of the law of 1843, on the ground that they were not parties to that proceeding, and not bound by it.

It is said, that the sole object in the Chambers case was to raise the question of the constitutionality of the act of 1846.

That is correct as far as it goes; but the object was also to have a decision whether the order under that law was void, or whether Robertson, by virtue of his prior appointment, could still sue and collect, and consequently revive suits, notwithstanding the act of 1846, and the order of sale under it. Without the order of the court being before this court in the Chambers case, there was nothing for it to act on, no question could have arisen. And yet one of the counsel who argued that case so ably, a skeleton of which argument he furnished the reporter, now insists that the case is an abstraction; counsel discussing for more than a week, and the court solemnly deciding on nothing! For, without Robertson's admission of the order of sale, as a fact and a part of the record in that case, there was nothing before the court for its consideration or decision at all.

And this assertion of counsel is drawn from the arguments of counsel and the opinion of the court in the Chambers case, because they did not argue about the nullity of the order, and the court did not say as much about its nullity in delivering its opinion, as counsel now say they ought to have done, in order to be binding in other cases. Counsel may object to the language of the court, but the judgment has the same effect, no matter by what process the court arrived at it, or whether it used any reasoning at all or not.

But the court in that case thought the question which laid at the foundation of the whole matter was, whether the fourth section of the act of 1846 was constitutional or not. If unconstitutional, if void on this ground, an order of sale, made by a court deriving its whole authority to make the order from the act, falls to the ground with the law itself; the source of power fails, and the act being unauthorized, is absolutely void; that the act being unconstitutional and void on its face, the order under it was equally void, as the court decided. The constitution declares acts contrary to it void. Hutch. Co. 41. Not an authority has been or can be produced, deciding that a court cannot inquire collaterally whether the order or judgment of a court is within its jurisdiction, under the constitution.

But it is said, that if such be the decision in the Chambers case, no constitutional question could ever come up before the

courts, but every party would decide for himself; and that in regard to the order of sale, there was not a want of jurisdiction, but merely an erroneous judgment. But the court, in the Chambers case, decided the reverse of this; that there was no jurisdiction or power in the circuit court to order a sale of the evidences of debt, as a remedy to the creditor; that the court under the constitution possessed no such power; and in deciding on that question, the court had necessarily to determine on the constitution and law relied on for the power. If the court could not do this collaterally, then it could not do so in any case. When the question is presented to a court collaterally to determine whether a court had jurisdiction of a case or not, whether a judgment is *coram non judice* or not, the court must inquire into and decide every question involved in such consideration, whether it involves an inquiry into the constitutionality of an act, or any other inquiry. When it is said, that the very question for the circuit court, in making the order, was to determine the constitutionality of the law and extent of the order, and, therefore, the order could only be erroneous, we answer that the same may be said of every case coming collaterally before the court. Thus, this court has decided in a suit on a promissory note, that the defendant may show want of consideration, by showing that the probate court had not complied with the prerequisites of the law in ordering a sale, which gave rise to the note, and thus the judgment of the probate court is declared void in a collateral suit, although the question of whether the prerequisites have been complied with, the jurisdiction of the court, and the extent of the order, were considered of by the probate court in decreeing a sale. So in the case of judgments on forthcoming bonds after the terms at which they became forfeited, the authorities being referred to in my printed brief. And so in any possible case that can arise.

Chief Justice Marshall, in delivering the opinion of the court in the case of *Griffith* v. *Frazier*, 8 Cranch, R. 23, comments on this objection of the opposite counsel, and recognizes the difficulty of determining, in some cases, whether a court has acted on a subject within its cognizance or not; but at the same time says that the difficulty of marking the precise line

of distinction, does not prove that no such line exists. Thus, in South Carolina, the ordinary has general jurisdiction over estates, granting letters testamentary and of administration. And yet, if it granted letters on the estate of a person not deceased, the letters would be void, although the question whether the person was dead or not, was one necessarily determined by the court in granting letters. So in the case of *Wales* v. *Willard*, 2 Mass. 120, where letters were granted after twenty years, against the statute, the grant was void. So of other examples given by this profound jurist.

Take the case of a second grant of administration; when the first is in full force; the last would be an absolute nullity.

So if a law were passed directing the chancery court to grant letters of administration, the grant by the chancery court would be a nullity. It cannot be pretended, that the administrator appointed by the probate court, or the distributees of the estate, would have to prosecute an appeal from this chancery appointment to avoid it.

But it is repeatedly asserted, that the circuit court in making the order had jurisdiction of the person of Robertson, the trustee, and of the subject-matter. It is asserted, that he was an officer of the court. Not so. Even if he had to account and close his trusteeship in that court, he is not before the court. In all orders or judgments he must appear as party plaintiff, and thus be in court, or he must be cited, otherwise an order affecting him is a nullity. Take an example from the probate court. The administrator files an inventory there under the law, the administration is conducted and closed there. And yet no one will pretend that the court, on the motion of the district attorney, or of its own accord, could make an order adjudging that the administrator sell the property and debts of the deceased, which he could only get rid of by an appeal or writ of error to the high court. He would be neither party nor privy to it; and until it shall be decided, that a stranger can go into court and obtain a judgment for or against a man, without the appearance of the latter, and that the latter can only avoid such order by a direct appeal to the high court, the proceeding is void, and binds nobody. In every

judgment and suit in a court of law there must be parties. In the order of sale there was none who would or could have been appellee or defendant, if Robertson had attempted an appeal or writ of error.

The filing of an inventory could give no jurisdiction. It was an act of supererogation on the part of Robertson, the law requiring the filing of the inventory being of no force. Any other citizen might have filed an inventory of his property and choses in action; and by the same reasoning, if the district attorney obtained an order of sale, the citizen could only set aside the order by going directly to the high court. Even if the trustee was to settle in that court, it would no more authorize such an order than it would be authorized in the probate court, on the application of a stranger.

But it is said, that the court had jurisdiction under the act of 1843; that the judgment was, that Robertson should sue and collect, &c., and that the circuit court, where it was rendered, must see it executed, by having the estate administered and closed there by the trustee. In fact, the main argument of the opposite counsel is based on this assumption. It is but an assumption, and unfounded in reality. When the circuit court appointed Robertson trustee under the act of 1843, at May term, 1845, to take charge of the assets, sue and collect the debts, sell the real estate, and pay over as might be thereafter directed by law, the functions and persons of that court in that case were at an end. The court had appointed a trustee, as an individual might, or as the chancery court might, where one was necessary to execute a deed of trust, and a trustee wanting; but there the jurisdiction would end, as far as derived from the appointment.

This has been fully settled in the Nevitt case, 6 S. & M. 513. This court there decides, that the act of 1843, in its provisions saving the assets, providing for their collection, &c., constitutes the property a trust fund for the benefit of creditors, &c., which no subsequent legislation can divert to any other purpose. The same opinion is reiterated in the Chambers case, that the assets are a trust fund, and the person appointed a trustee. Chancery alone has jurisdiction, and there Robertson

is alone amenable.   Creditors and stockholders there, in equity, can alone hold him accountable.   The circuit court has no more jurisdiction of trusts and trustees than of the probate of wills.   The act of 1843 "only gave a representative."   The Chambers case (8 S. & M. 24–29) shows, that the act of 1846 is void as taking away all remedy, and an auction sale under the act of 1843 is the same.

Then if Robertson filed an inventory, or appeared even in a court not having jurisdiction, such conduct would not confer jurisdiction ; cases cited in printed brief.   9 Cow. R. 227 ; 4 S. & M. 549–563.

It might as well be said, that the filing of a will in the chancery court gave the court jurisdiction of the will to pro- bate it.   The constitution and the laws must confer it if it exists.

But for the nature and character of this order of sale, that it is no judicial proceeding, no remedy for the prosecution of a claim due by one person to another in a court of justice, and has no more effect in law than if made by a secretary of State, or any other civil officer, under a law enacted for that purpose. I rely upon the decision in the Chambers case.

Another view of this case, apart from the decision in the Chambers case, seems to me conclusive of itself.   Robertson sets up his authority to take charge of, and sue for, and collect the debts, under his appointment at the May term, 1845, of the circuit court of Adams county, under the act of 1843.   The plea admits this, but to avoid it, sets up the order of sale, made by the same court three terms afterwards under the act of 1846. Here there are two orders or judgments, as counsel insist, of the same court, one of them under the act of 1843, to sue and collect the debt, decided by this court in the Nevitt case, and in other cases, to be valid, whereby Robertson became the owner of the debt, with the same right and power to enforce its collection by suit, which the bank had before the forfeiture ; and the other order is to sell the debt under the act of 1846, substituting an auction sale for the remedy by suit in a court of justice, guaranteed by the constitution.   Now, if Robertson is not entitled to sue or sell as he might choose, the act of 1846

is unconstitutional, as I understand to be ·virtually conceded by counsel, and so decided in the Chambers case. And yet it is contended, that an order of a court resting upon an unconstitutional and of course void law, as long as it stands upon the records of the court, supersedes, by its own intrinsic force, and *ipso facto* destroys, the order under a valid law, investing the trustee with the power to sue and collect; that this order of sale under an unconstitutional law can only be got rid of by a direct appeal or writ of error, and reversal by this court; but that the order appointing Robertson to sue and collect, &c., must be adjudged by this court, collaterally, in this suit, to be revoked and annulled, although the judgment and appointment stand in full force on the records of Adams circuit court. Robertson's appointment vested in him absolutely the debts, and the right to sue for and collect them, as this court has repeatedly decided. The language of the order directing him to sell cannot be more comprehensive for the purpose; and it is urged, that the former order will be treated as a nullity when coming before the court collaterally, but that the latter order cannot be inquired into or treated as void, when thus coming before the court collaterally. If counsel can maintain this position, then an unconstitutional law repeals a constitutional law; and an order under a void law *ipso facto* repeals an order or.judgment under a valid law. And if this can be done, then, if the act of 1846 had ordered the court to appoint other trustees in cases where judgments of forfeiture had been previously rendered and trustees appointed, the court, on the motion of the district attorney or otherwise, could have appointed a trustee to take into possession and sell the assets of the late Commercial Bank of Natchez; and such an order at the November term, 1846, of the court, would have superseded and annulled Robertson's appointment, although standing in full force on the records of the court, and could be set up in law by any debtor against Robertson collaterally. This is undeniable; Robertson's right to take charge of the assets is not more sacred or perfect than his right to collect them; and if the right to sue and collect can be thus annulled, so can his right to hold the property or exercise the trust.

Again.   Robertson appeared, executed a bond, and quali-
fied under his appointment of the 12th of June, 1845, and thus
accepted the trust as there conferred upon him.  But he neither
moves for nor accepts the order of sale of 1846.   It is made on
the motion of a stranger, the district attorney.   It is not made
on the application of the party interested.   The court had
neither jurisdiction of the person nor subject-matter.   Neither
was before the court when the order was made.

How could the court arrive at any other conclusion, on prin-
ciple or authority, than the one it did in the Chambers case;
that the act being unconstitutional and void, it conferred no
power on the court to make the order?   The order was neces-
sarily as void as the law; as absolute a nullity as a grant of
administration, while letters testamentary had been granted in
full force on the same estate; or as a grant of letters testa-
mentary or of administration by the circuit court under our
constitution, with or without an act of the legislature, attempt-
ing to confer power in the face of the constitution.   The well
considered reasoning of Judge Marshall, in the case of *Griffith*
v. *Frazier*, 8 Cranch, R. 9–19, 24, &c., cited by the opposite
counsel, and the well considered opinions of Judges Sharkey
and Clayton in the Chambers case, are decisive, apart from the
binding authority of the decision of this court.

But grant a moment, for argument's sake, that the order of
sale is valid; what is its effect?   Robertson is still the legal
holder and owner of the notes sued on, just as he was before
the order.   If not, he had no right to sell, and such an attempt
would be a fraud on the purchaser.   Now this naked order of
sale is pleaded in bar, in this case, to the suit on the notes.
But it cannot be, for the plainest of all reasons, that the legal
title, the ownership of the notes, is in the plaintiff.   For in-
stance, he is ordered to sell the property; but until he does sell,
the title is in him; he can protect the property, sue for trespass,
the recovery of a negro, if taken out of his possession by a third
person, and his title to the choses in action is the same until a
sale.   Suppose a probate court orders a sale of negroes by an
administrator, the title is in him till the sale.   Suppose a court
of chancery orders a deed to be made, or a security to be trans-

ferred; until the order be complied with it could not be set up in bar to a suit at law. It would be a ground for a bill in chancery to enjoin, until the order should ·be complied with.

A class of cases, decided by this court under the injunction provision in the act of 1843, is clearly in point. The injunction, issued with the commencement of the *quo warranto* proceeding, prohibited the bank from collecting any of its debts during the pendency of the proceeding, except in attachment cases; and it had the force and effect of an injunction out of chancery. It enjoined the court from proceeding to institute any suit for the recovery of a debt due it, as this court decided in the Rodney Bank case, 4 S. & M. And yet this injunction, or order on the bank, did not deprive it of its right to prosecute suits against its debtors.

In the case of *The Commercial Bank of Manchester* v. *Waters et al.*, the bank issued an execution pending the injunction, which the court admits to be valid; yet the court decide that it is no ground for a supersedeas, or for staying or quashing the execution, much less to bar the right of the bank to the debt. So, in the case of *Robertson, Trustee*, v. *Hoy*, 12 S. & M. 566, 567, and 13 Ib. 509–516, we have the same views of this court reiterated. An injunction operates not upon the cause of action, but as a restraint upon the person.

But it may be said, that in the Chambers case the court decides that the act of 1846, if valid, deprives the trustee of the power to sue and collect; but the court also decides that the act is unconstitutional and void, and does not deprive the trustee of the powers conferred on him by the act of 1843, notwithstanding the order to sell under the law of 1846. With this decision, we repeat, we are content, believing it to be founded on principle and authority.

Still, if we are deprived of the power to sue and collect, as the opposite counsel contend, we have the power to sell. But if the plea in bar be sustained, the trustee is deprived of that right, the cause of action is forever barred, and the defendants are adjudged to be discharged from all obligation to pay the debt. If the plea had set up, that Robertson had been ordered

to sell, and had sold, and thereby divested himself of his cause of action, his title to the note, such a plea would at least have had some plausibility on its face, and might have been safely replied to, to shorten litigation. But on this plea in bar, the judgment is conclusive on the rights of the parties. So long as the rules of pleading are regarded, and principles of law respected, I conceive that the constitutionality of the law of 1846, (I mean the 4th section of it, as applicable to this case,) and the validity of the order of sale, cannot arise and be decided by the court on a plea in bar.

A plea in abatement, or to the jurisdiction, alleging that the trustee's remedy was in an auction room and not in the courts of the country, or a motion to dismiss, or a bill in chancery, might bring before the court to be tested the constitutionality of the act of 1846, and the validity of the order of sale. In the Chambers case, it was on a motion to revive; and if the trustee had failed, he would have gone out of court with his right to the debt, and could have sold it. If this plea in bar be sustained, it is the reverse.

In referring to the Chambers case, the court will readily see the disastrous consequences that would now flow from a different decision. If this court had decided that the order of sale was not void, and that a reversal on appeal or writ of error was necessary to get rid of it, the trustee would, in discharge of his duty, have had it reversed. But he is now barred by the statute of limitations allowing two years to prosecute a writ of error.

This case is not distinguishable from the Chambers case, and the law is there settled. The courts of the country, and the bar, at home and abroad, have not only acquiesced in the decision as settling the law, but all unite and concur in it, as founded on the constitution, in sound reason, and on correct principles; and it is not now to be disturbed. Counsel and citizens, as well as all judicial tribunals, have been governed by it, as the law of the land. A different decision by this court, at this late day, under the circumstances, would not only be productive of irremediable mischief, but would destroy all

confidence in, as it ought to ·destroy all respect for, the most solemn decisions of the court.

But let us, out of respect for the opposite counsel, refer to a few points and authorities, the same as if the law had not been so settled by our highest judicial tribunal.

If a court assumes to act when it has no jurisdiction, its acts are void, and want of jurisdiction can be shown whenever the judgment is relied on; and the principle which ordinarily forbids the impeachment or contradiction of a record, has no application to such a case. 9 Cow. R. 227; 14 John. R. 227; 15 Ib. 141; 19 Ib. 7; *Wales* v. *Willard,* 2 Mass. R. 120; 11 Ib. 509; 7 Ib. 83; 2 Levinz, R. 33; 3 Cr. R. 330; *Ex parte Barker,* 2 Leigh, R. 719.

The judgments of all courts may be examined into, so far as to ascertain whether they have jurisdiction, whenever the question is raised directly as well as collaterally. 1 S. & M. 368; *Enos* v. *Smith,* 7 Ib. 90.

Thus, an illegal order quashing a forthcoming bond, after the return term, being void, an execution may issue without setting aside the order. *Bell et al.* v. *Tombigbee R. R. Co.,* 4 S. & M. 549; 2 Ib. 535.

An attachment without bond is void, and the judgment against the garnishee in such a case is void, and no bar to a suit against the garnishee. *Ford* v. *Hurd,* 4 S. & M. 683; *Tyson* v. *Hamer,* 2 How. R. 669; *Ford* v. *Woodward,* 2 S. & M. 260.

Now, these are cases where the court has general jurisdiction over the subject-matter. How different from the present case. This want of jurisdiction, too, is not cured by the appearance and plea of the defendant. *Pender* v. *Felts,* 2 S. & M. 535; *Bell et al.* v. *Tombigbee R. R. Co.,* 4 Ib. 549–563.

So, in sales under an order of the probate court, where it appears the prerequisites have not been complied with, the purchaser can collaterally, in a suit for the purchase-money, avoid the order of sale. 6 How. R. 106–230.

And if authorities were necessary, the one just cited would be sufficient to show that the filing of an inventory of the assets

of the bank, in the circuit court of Adams county, by Robertson, could not confer jurisdiction on the court to make the order of sale. Parties by consent cannot give jurisdiction, much less would the court imply it, as contended for on this point by the opposite counsel. If an appearance and plea does not cure the defect of want of jurisdiction, how weak must be the argument which insists that such defect is cured in an order made without any appearance or plea. But this point has also been disposed of in the decision of the case of *Chambers* v. *The Commercial Bank of Natchez.*

Suppose a circuit court of the State were to order, with or without an act of the legislature, that every suit in the court, with the claim on which it is founded, should be set up and sold at auction by the sheriff to the highest bidder, and the net proceeds delivered to the plaintiffs as their remedies, will any one seriously pretend that such plaintiff would have to prosecute an appeal or writ of error, to get rid of such an order, before he could prosecute his legal and constitutional remedy?

Examine the law and order of sale; examine the authorities as to remedies under the constitution, and the jurisdiction and powers of the circuit court under the constitution, as well as the opinion of this court in the Chambers case already cited; and, apart from the conclusiveness of that decision, the court must come to the same conclusion again, that the order of sale is a nullity, and the rights and liabilities of the parties in this case are just the same as if no such order had ever been made.

The very definition of a court, of a judicial proceeding, of a remedy in a court of justice, as given by Blackstone, or any other law writer, is decisive of the question.

2. Under the second special plea, it is insisted in bar of Robertson's recovery of the debt, that no execution ever issued in favor of the State on the judgment of forfeiture.

We confess that we cannot comprehend the ground on which this matter (if there were any thing in it) can be plausibly urged, in avoidance of Bingaman and Surget's liability for the debt sued on. As we remarked on the other plea, if this objection could be taken advantage of, it could only be by plea in

35 *

abatement. It does not-go to the cause of action; it is no answer to the declaration.

But, admitting that the judgment, so absolute in its nature and language, did not *ipso facto* dissolve the corporation, as suggested by this court in the case of *Nevitt* v. *Bank of Port Gibson*, 6 S. & M. 568; still, the rights of the trustee vest in him simultaneously with the rendition of the judgment and his appointment, constituting but the one act, the one judgment of the court.

The court, in the case just cited, decide, that " the appointment of the trustees is intended by the statute to be a part of the judgment, or to be made at the same instant with it. By the judgment, or simultaneously with it, the assets pass to the trustees in trust for the creditors and stockholders, in virtue of the assignment. When the judgment afterwards is carried into effect by a seizure of the franchises, the debts due the bank have already passed beyond the reach of the consequences of a dissolution, and no extinguishment takes place."

The assets, too, were delivered over to the trustee under the judgment of forfeiture; and, as trustee, he holds the notes sued on, and given in evidence on the trial.

No matter, then, whether the rights, privileges, and franchises of the corporation still exist or not, as far as this case is involved, the trustee holds the notes, and is entitled to sue on them. The right to this debt is in him. The leading ground taken by Nevitt's counsel, and the dissenting judge, in his opinion in the case cited, was, that an interval elapsed between the judgment and the appointment of the trustee, wherein and whereby the debts due the bank became extinct. And if the trustee's rights did not commence until an execution was issued and returned, some six months afterwards, there would be quite an interval indeed. But the court establish a different doctrine, as we have just shown.

Again, the bank submitted to the judgment, and surrendered her assets to the complainant under it. The judgment was executed fully and at once, without an execution. The issuance of an execution would have been idle. No one ever heard of an execution issuing after the defendant had complied

with the judgment against him. The law requires neither the State nor an individual to do an useless and absurd thing, as taking out an execution, under the circumstances, would have been.

But, until the appellants shall exhibit their bill in equity, showing that the late Commercial Bank still claims to be in existence, and to recover from the appellant the debt mentioned in the record, and shall pray that the dissolved bank and the appellee shall appear and interplead, that the court may determine to which claimant the appellants shall pay the debt, we shall give the subject no further consideration.

*Potter*, on the same side, argued the case orally.

*G. S. Yerger*, on the same side.

*Tupper*, on the same side, filed an elaborate brief.

Mr. Justice YERGER delivered the opinion of the court.

The defendant in error commenced suit in the circuit court of Adams county against Bingaman and Surget on a note made by them to the Commercial Bank of Natchez. The charter of that bank was declared forfeited at the June term, 1845, of the circuit court of Adams county, by virtue of proceedings had in accordance with the provisions of the act of July 26, 1843. Hutch. Code, 329. And Robertson was appointed a trustee to sue for and collect the debts of the bank, and thus derived his title to the note sued on.

The suit was begun on the 1st day of October, 1847.

The defendants pleaded in bar of the suit, that, at the November term, 1846, of the circuit court of Adams county, on motion of the district attorney, it " was adjudged that the plaintiff, as trustee, should sell to the highest bidder for cash all the property and evidences of debt of said bank specified and set forth in a schedule by him rendered to said court, at the places and in the manner and form according to said schedule, and according to the statute in such case made and provided; which judgment remains in full force and unreversed."

The question thus presented by the plea, is substantially the same decided by this court at the January term, 1847, in the case of the *Commercial Bank of Natchez* v. *Chambers et al.*, 8 S. & M. 1.

In that case it was held, that upon the judgment of forfeiture, rendered against the bank in June, 1845, and the appointment of Robertson, trustee, the legal title of all the property that had belonged to the bank, was vested in Robertson, for the use of the creditors, and that the act of February, 1846, by virtue of which the trustee was ordered to sell the debts due to the bank, was unconstitutional and void, and that the judgment of the court ordering the sale was, therefore, a nullity. In the present case, a most elaborate and ingenious argument has been made, in which counsel have attempted to show, that although the act of the legislature of 1846, by which the court was empowered to make the order of sale, is unconstitutional, yet the judgment of sale being made by a court of competent jurisdiction, which thereby adjudicated the law to be constitutional, is only erroneous and not void, and cannot be attacked in a collateral suit, but must be enforced until vacated or set aside in a direct proceeding.

The conclusion to which we have come, renders it unnecessary that we should decide the very interesting question thus made by the counsel for the plaintiffs in error. According to the previous adjudications of this court, made after the most elaborate argument, and upon careful investigation, the legal title to all the property, including the choses in action, which belonged to the Commercial Bank of Natchez, was declared to be vested in Robertson, the trustee, by operation of law, and the proceedings of the court consequent upon the declaration of the forfeiture of the charter of the bank.

By virtue of this legal title, and according to the provisions of the act of July 26, 1843, Robertson was authorized and empowered to sue for and collect the note in controversy. Although the order, or judgment of sale, pleaded by the defendants, be not void, but only voidable, it does not, in our opinion, divest or take away the right or title of Robertson, previously vested. By the order commanding him to sell, he is not enjoined from

bringing suit upon the note, nor do we think that the order to sell can be construed into a prohibition to sue. In this respect, he stands in a position strictly analogous to that of an executor or administrator, who has been directed by the order of the probate court to sell the personal property belonging to the estate upon which he has administered. As the legal title to the property is vested in him by operation of law, the mere order to sell does not divest it; and until he makes sale thereof, he may maintain any action in reference to the property, after the order of sale, that he could have maintained before. Entertaining these views, we are of opinion, that the judgment of the court below should be affirmed.

We would remark in relation to the third plea, that we consider the appointment of the trustee by the court, the only execution of the judgment of forfeiture ever contemplated by the law.

Judgment affirmed.